NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0191n.06

Case No. 15-1375

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT TOMPOS, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Apr 05, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF TAYLOR, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, SILER, and BATCHELDER, Circuit Judges.

**SILER**, Circuit Judge. Robert Tompos ("Tompos"), former fire chief for the City of Taylor, appeals the district court's grant of summary judgment to his employers, the late Mayor Jeffrey Lamarand ("the Mayor") and the City of Taylor ("the City," collectively "Defendants"), on his First Amendment retaliation claim. For the following reasons, we **AFFIRM**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Tompos served as fire chief for the City from 2011 until his termination in 2013. During that time, the Mayor made numerous budget reductions that, according to Defendants, were enacted to reduce the City's almost $5,000,000 deficit. As a result of the budget cuts, more than thirty employees in the Fire Department were laid off in 2011 and 2012.

Throughout his time as fire chief, Tompos made numerous complaints and reports to the Mayor, to the Taylor City Council, and to the local news media. In particular, he persistently complained that:

(a) Protective clothing and gear used by firefighters [were] out of date, out of compliance with applicable safety standards, dangerous to the firefighters using it, and could cause significant injury or death to firefighters;

(b) Reduced staffing of the Fire Department slowed response times and posed a danger to the public;

(c) Reduced staffing of the Fire Department posed a danger to responders;

(d) Reduced staffing meant that the Fire Department could not operate within applicable safety standards; and

(e) Defendant Lamarand wrongfully removed $60,000 from the Fire Department's portion of the City budget.

Tompos claims that the Mayor, both personally and through his agents, warned Tompos to "watch what he said to the media"; repeatedly threatened to terminate him; removed and reassigned his duties; intercepted his reports to the City Council; and ultimately prevented him from reporting directly to the City Council. Defendants terminated Tompos in 2013, citing budgetary concerns and the elimination of his position.

Tompos filed suit against the Mayor and the City, alleging violation of the Michigan Whistleblower Protection Act and First Amendment retaliation under 42 U.S.C. § 1983. The district court granted summary judgment to Defendants on Tompos's § 1983 claim and remanded his state whistleblower claim to the Wayne County Circuit Court. Tompos now appeals the district court's holding that he was a "policymaker" under *Rose v. Stephens*, 291 F.3d

917, 921 (6th Cir. 2002), and thus was not entitled to First Amendment protection for his policy-related statements.[1]

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004).

## DISCUSSION

### I.  First Amendment Retaliation Under § 1983

To make out a prima facie claim for First Amendment retaliation under § 1983, a plaintiff must show that (1) he "engaged in constitutionally protected speech," (2) he "was subjected to adverse action or was deprived of some benefit," and (3) "the protected speech was a 'substantial' or a 'motivating factor' in the adverse employment action." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Further, to prove that first prima facie element—that his speech was constitutionally protected—a public employee must establish that (1) "he was speaking as a private citizen, rather than pursuant to his official duties," (2) "his speech involved a matter of public concern," and (3) "his interest as a citizen in commenting on the matter outweighed '"the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."'" *Westmoreland v. Sutherland*, 662 F.3d 714, 718–19 (6th Cir. 2011) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968))).

---

[1] The district court did not consider the Defendants' arguments regarding causation and qualified immunity. Because of this, and because there are already ample grounds to affirm, this court need not address those arguments on appeal. *See Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 576 (6th Cir. 2013) ("Absent 'exceptional circumstances,' we normally decline to rule on an issue not decided below." (quoting *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003)).

In addition to this *Pickering* balancing of public employees' interests against those of governmental employers, the Supreme Court "has recognized that the government has a[n] . . . interest in securing employees who will loyally implement the policies of its democratically elected officials." *Rose*, 291 F.3d at 920–21 (citing *Elrod v. Burns*, 427 U.S. 347, 367 (1976)). Accordingly, "[a]lthough the Court determined that political patronage dismissals normally violate the First Amendment in this line of cases, it also created the exception that termination of public employees in policymaking or confidential positions may be based solely on their political affiliation without violating the First Amendment." *Id.* at 921 (citing *Elrod*, 427 U.S. at 367; *Branti v. Finkel*, 445 U.S. 507 (1980)).

In *Rose*, we "addressed the question of whether the *Elrod/Branti* exception applies to the situation where a policymaking or confidential employee is discharged on the basis of actual speech rather than political affiliation." *Id.*[2] On that issue, we held that "where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Id.* In reaching this conclusion, we reasoned that

> the rule we adopt today simply recognizes the fact that it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employer, and, as the Supreme Court has recognized, "employees may always be discharged for good cause, such as insubordination . . . ." *Elrod*, 427 U.S. at 366. In this situation an individualized balancing of interests is unnecessary.

---

[2] Plaintiff argues that the *Elrod/Branti* exception does not apply since political affiliation is not required for an employee to be appointed fire chief. As will be further discussed below, however, the alleged irrelevancy of political affiliation to the fire chief position would not preclude its classification as a confidential or policymaking position to which the *Rose* presumption would apply. *See Rose*, 291 F.3d at 924.

*Id.* at 923. Thus, if a public employee's policymaker status and policy-related statements dispositively tip the *Pickering* balance in favor of the government as a matter of law, then that employee cannot establish the protected-speech element of his prima facie claim for First Amendment retaliation—and his claim must fail.[3]

In light of this framework, the district court correctly identified the two crucial issues in the instant case: "(1) whether Plaintiff occupied a policymaking or confidential position; and (2) whether Plaintiff's speech addressed matters related to politics or policy."

## II.    Policymaker Status Under *Rose*

There are four general categories of positions to which the *Elrod/Branti* exception applies:

> **Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors;

---

[3] In *Stinebaugh v. City of Wapakoneta*, No. 14-4262, 2015 WL 7003757 (6th Cir. Nov. 10, 2015), we affirmed the district court's denial of summary judgment to the public employer of a fire captain that spoke as a citizen on a matter of public concern. That case is not particularly relevant to the instant case, however—nor is it cited by either party—given that the *Elrod/Branti* exception was not implicated by the facts or the firefighter's position in *Stinebaugh*.

> **Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Rose*, 291 F.3d at 924 (quoting *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996)). In light of the discretionary authority that the fire chief exercises with respect to the enforcement of fire prevention laws and the implementation of Fire Department policies, the district court correctly classified fire chief as a Category Two position,[4] and thus the *Elrod/Branti* exception applies.

According to the Fire Department rules and regulations, which Tompos admitted in his deposition was a description of the fire chief's duties, the fire chief is charged with numerous responsibilities, including: (1) "control[ling] . . . all assignments of all firefighters and employees in the Department"; (2) disciplining and removing firefighters; (3) "direct[ing] the observance and enforcement of all fire prevention laws of the State of Michigan, and the ordinances of the City of Taylor"; (4) "keep[ing] the Mayor and City Council fully acquainted with . . . all . . . pertinent information to his/her office"; (5) investigating reports of "violations of law or ordinances, rules and regulations, or orders governing the department"; and (6) "visit[ing], or caus[ing] to be visited, . . . all divisions of the Fire Department to inspect the efficiency of the Department." Tompos has conceded that he was authorized to fulfill these responsibilities.

This court has previously held that similar jobs entailing comparable responsibilities qualified as policymaking or confidential positions under the *Elrod/Branti* exception. For instance, in *Dixon v. Univ. of Toledo*, 702 F.3d 269 (6th Cir. 2012), the exception applied to the

---

[4] Tompos mistakenly asserts that "[t]he trial court improperly held that Fire Chief was a category one position." Actually, the district court noted that "the position is not named in law" (which rules out Category One as a possibility), but "the fire chief possesses the same discretionary authority as a Category One position—mainly, the carrying out of policies of political concern" (which clearly echoes Category Two's "possessing . . . the same quantum or type of discretionary authority commonly held by category one positions" language).

Associate Vice President for Human Resources who "was responsible for answering grievances, issuing disciplinary and corrective action, . . . supervising approximately forty employees, . . . making presentations at town-hall meetings[,] . . . . [and] recommending, implementing, and overseeing policy." *Id.* at 276. In another case, an assistant chief examiner of the Civil Service Board whose "work appear[ed] to have had the potential to substantially impact the daily implementation of the city's diversity policies" qualified as a policymaking position under *Elrod/Branti*. *Silberstein v. City of Dayton*, 440 F.3d 306, 320 (6th Cir. 2006). Surely, a fire chief empowered to "direct the observance and enforcement of all fire prevention laws of the State of Michigan, and the ordinances of the City of Taylor" similarly qualifies as a policymaking role.

Tompos resists this characterization of his position, and repeatedly attempts to downplay his discretionary authority by describing how the Mayor or City Council may approve or repudiate certain of the fire chief's decisions. However, the fact that the fire chief exercises authority delegated and circumscribed by the Mayor in no way precludes classifying the position of fire chief as a policymaking employee. *See Latham v. Office of Att'y Gen. of Ohio*, 395 F.3d 261, 269 (6th Cir. 2005) ("[W]here, as here, the employee exercises significant authority on behalf of a policymaker (even with close supervision), where the employee is responsible for making important policy implementation recommendations to a policymaker, and where the inherent duties of the employee are broad and limited primarily by the discretion of the policymaker, it is likely that the employee is herself a confidential or policymaking employee under *Elrod*."). Were it otherwise, only the highest echelons of agency authority would be considered policymaking positions, and the *Elrod/Branti* exception would be largely eviscerated.

Tompos's weighty responsibilities clearly constitute "discretionary authority with respect to the enforcement of th[e] law or the carrying out of some other policy of political concern"

(Category One language), and thus the position of fire chief "possess[es] . . . the same quantum or type of discretionary authority commonly held by [a] category one position[]" (Category Two language). *Rose*, 291 F.3d at 924 (quoting *McCloud*, 97 F.3d at 1557).

And finally, even if there were any uncertainty about whether Tompos's discretionary authority amounted to that of a Category Two position, "[a] government position is not required . . . to fall neatly within one of the categories to be entitled to the *Elrod–Branti* exception." *Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 436 (6th Cir. 2000). "[I]f there is any ambiguity about whether a particular position falls into any of [the four categories], it is to be construed in favor of the governmental defendants when the position at issue is unclassified or non-merit under state law per the *Rice* canon." *McCloud*, 97 F.3d at 1557 (citing *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133, 1143 (6th Cir. 1994)). Thus, the district court did not err in concluding that "it is clear that Plaintiff occupied a policy[]making position and the first requirement of the Rose analysis is met."

## III. Policy-Related Speech

Next, we must determine whether Tompos's speech addressed matters related to politics or policy. As in the *Rose* case, "[t]his inquiry is also easily satisfied in this case," as his numerous statements to the media and City Council "clearly related to [fire] department [and mayoral] policies." 291 F.3d at 924-25.

Tompos protests that he "did not speak out on budget decisions or budgetary processes"; "his statements to the press and City Council [were] about *safety issues* affecting Taylor citizens, *e.g.*, slower response times, defective turnout gear, and lack of firefighters to man trucks, . . . *not* political or policy views." However, the funding and staffing deficiencies that Tompos so tirelessly decried to the media and City Council were inextricably bound up in the Mayor's

budgetary policies. And as this court emphasized in *Rose*, "[w]hen such an employee speaks in a manner that undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the working relationship between a confidential [or policymaking] employee and his superiors." 291 F.3d at 923.

Accordingly, given Tompos's status as a policymaking employee, and because Tompos's statements were policy-related, the district court did not err in granting summary judgment to the City.

**AFFIRMED.**